UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VALERIE ANZOVINO,

                         Plaintiff,                    **DECISION AND ORDER**

       -against-                                  21 Civ. 7625 (AEK)

WINGATE OF DUTCHESS, INC.,

                        Defendant.
------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

      Currently before the Court is Plaintiff Valerie Anzovino's motion for leave to file an amended complaint pursuant to Rules 15, 20, and 21 of the Federal Rules of Civil Procedure. ECF Nos. 27-29.  For the reasons that follow, Plaintiff's motion is GRANTED.

## BACKGROUND

      On September 13, 2021, Plaintiff filed the original complaint in this matter, asserting claims against Defendant Wingate of Dutchess, Inc. ("Wingate of Dutchess") for wage and hour violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). ECF No. 1 ("Compl.").  According to the original complaint, Plaintiff was previously employed as a "Regional Admissions Coordinator" by Defendant, a health care facility offering nursing home services.  *Id.* ¶¶ 7, 13.  Defendant filed its answer to the complaint on November 22, 2021. ECF No. 7.  The parties consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c) on February 23, 2022, ECF No. 17, and the Court approved the parties proposed scheduling order on March 1, 2022, ECF No. 18 ("Scheduling Order").  The Scheduling Order provided that "[a]ny motion to amend or to join additional parties shall be filed by March 25, 2022."  *Id.* ¶ 3.  On March 2, 2022, the parties participated in an unsuccessful mediation.  *See*

3/2/2022 Minute Entry.[1]  Thereafter, the parties engaged in discovery.  *See* ECF No. 28 ("Clark Decl.") ¶¶ 4, 7; ECF No. 33 ("Def.'s Opp.") at 5 (noting that the parties exchanged formal written discovery and additional document productions in early May 2022).

On July 13, 2022—days before party depositions were to take place—counsel for Defendant informed counsel for Plaintiff that Wingate of Dutchess had been put into a receivership and was effectively shutting down its business.  Clark Decl. ¶¶ 4, 5; Def.'s Opp. at 5.  In light of this development, the parties agreed to adjourn the scheduled depositions so that Plaintiff could determine how to proceed with her claims.  *See* Clark Decl. ¶ 6.  Plaintiff states that after reviewing documents produced during discovery, she determined that "a legal basis existed to include the parent corporation of [Defendant] . . . as a joint employer or single integrated employer of [P]laintiff" in this action.  *Id.* ¶ 7.  Plaintiff asserts that both entities—Defendant and its parent corporation, Wingate Healthcare, Inc. ("Wingate Healthcare")—are liable under the same causes of action and theories of liability that are alleged in the original complaint.  *Id.* ¶¶ 9-10.

On August 1, 2022, Plaintiff filed her motion to amend, and included a copy of her proposed amended complaint.  ECF Nos. 27 (Notice of Motion), 28-3 ("Am. Compl.").  The proposed amended pleading would add Wingate Healthcare as a defendant and would include factual allegations concerning Wingate Healthcare.  *See* Am. Compl. ¶¶ 7, 14-36.  On August 22,

---

[1] Pursuant to the mediation referral order issued on November 23, 2021, the parties were required to exchange certain limited documentation in advance of mediation.  ECF No. 8.  These documents included, but were not limited to, "any existing documents that describe Plaintiff's duties and responsibilities," "existing records of wages paid and hours worked by the Plaintiff," and "documents describing compensation policies or practices."  *Id.*  Based on the minute entry from a telephonic conference before the Honorable Philip M. Halpern on February 23, 2022, it appears that the parties had not exchanged all of the documents required for the mediation.  *See* 2/23/2022 Minute Entry (memorializing that Court "directed that the parties exchange the documents necessary to participate in mediation").

2022, Defendant filed its opposition to the motion, Def.'s Opp., and on August 29, 2022, Plaintiff submitted her reply, ECF No. 34 ("Pl.'s Reply").  After the motion was fully briefed, the parties requested—and the Court granted—adjournments of discovery deadlines while the motion remained pending.  *See* ECF Nos. 35-36, 38-39.

## DISCUSSION

### I. Standard of Review

The standards for amending pleadings and joining parties are governed by Rules 15, 16, 20, and 21[2] of the Federal Rules of Civil Procedure—Rules 15 and 16 govern amendments generally, and Rules 20 and 21 govern the propriety of adding new parties.  The Second Circuit explained the interplay of Rules 15 and 16 in *Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. 2021):

> At the outset of the litigation, a plaintiff may freely amend [his or] her pleadings pursuant to Rule 15(a)(1) as of right without court permission.  After that period ends—either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2).  This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility."  The period of "liberal" amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted.  It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up[on] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

---

[2] Although the title of her memorandum of law suggests that Plaintiff purports to move pursuant to Rules 15, 20, and 21, she appropriately discusses this motion in the context of Rule 16(b).  *See* Pl.'s Mem. at 1-2.

"There is an obvious tension between Rules 15(a) and 16(b). On one hand, Rule 15(a) directs the court to grant leave to amend 'freely.' On the other hand, Rule 16(b) states that the court should not amend a scheduling order without a showing of 'good cause.'" *Suarez v. Cal. Natural Living, Inc.*, No. 17-cv-9847 (VB), 2019 WL 5188952, at *2 (S.D.N.Y. Oct. 15, 2019) (quotation marks omitted). For a Rule 16 analysis, "a finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Although "the primary consideration is whether the moving party can demonstrate diligence, it is not the only consideration." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (cleaned up). Rather, the Court, "in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.* "Consistent with this case law, many district courts have undertaken a Rule 16(b) 'good cause' analysis that considers prejudice to the opponent in addition to the moving party's diligence." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014). Ultimately, "the decision as to whether to let Rule 16(b) stand as a bar to amendment lies within the court's discretion." *Qanouni v. D&H Ladies Apparel LLC*, No. 18-cv-2763 (GBD) (DF), 2021 WL 9036182, at *8 (S.D.N.Y. Mar. 23, 2021) (citing *Parker*, 204 F.3d 326 at 340).

Where a proposed amendment seeks to add a new defendant, Rules 20 and 21 also apply. Under Rule 20, defendants may be joined if the claims against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *see also* Fed. R. Civ. P. 21 ("[T]he court may at any time, on just terms, add or drop a party."). For motions to amend pursuant to Rule 15, "[j]oinder is decided under the same standard of liberality afforded to

motions to amend." *Almazo v. M.A. Angeliades, Inc.*, No. 11-cv-1717 (MGC), 2015 WL 6965116, at *5 (S.D.N.Y. Nov. 10, 2015) (quotation marks omitted). Where the time to join additional parties has expired, "a motion to join additional parties is subject to the 'good cause' requirement of Rule 16(d)." *Kleeberg v. Eber*, 331 F.R.D. 302, 315 (S.D.N.Y. 2019).

## II. Analysis

Because the Scheduling Order entered in this case set a deadline for filing amended pleadings, and that deadline passed before Plaintiff sought leave to amend the complaint, the Court reviews Plaintiff's motion for leave to amend the complaint under the Rule 16(b)(4) "good cause" standard. *See Sacerdote*, 9 F.4th at 115.

### A. Diligence

"To show good cause, a movant must demonstrate diligence before filing her motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014). Where a party learns relevant facts through discovery after the scheduling order deadline lapses, the party's inability to amend prior to the expiration of the deadline does not constitute a failure of diligence. *See, e.g.*, *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 507-08 (S.D.N.Y. 2013) (finding plaintiff acted diligently in moving to amend complaint following expiration of scheduling order deadline upon allegedly learning relevant facts in discovery); *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 148-49 (S.D.N.Y. 2012) (same). To the contrary, "[a] party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Scott*, 300 F.R.D. at 197 (quotation marks omitted). "The burden of demonstrating good cause rests with the movant." *Id.* at 198.

5

Plaintiff asserts that she learned of key facts to support her "employer" theory against Wingate Healthcare by more fully analyzing the document discovery produced in this matter after she was informed by defense counsel that Wingate of Dutchess had been placed into a receivership. ECF No. 29 ("Pl.'s Mem.") at 2; Pl.'s Reply at 2; Clark Decl. ¶¶ 5-7. Defendant counters that the proposed amendment is "based exclusively on information known by Plaintiff well before the March 25th deadline." Def.'s Opp. at 8. Specifically, Defendant maintains that the facts added to the Amended Complaint were not newly discovered insofar as they "concern Plaintiff's own job responsibilities and her interactions with her immediate supervisors." *Id.*

Defendant is correct that Plaintiff's proposed amended pleading includes certain facts that Plaintiff knew or should have known prior to the March 25, 2022 deadline, such as information gleaned from the Wingate Healthcare website. *See* Am. Compl. ¶¶ 15, 19. Other facts, however, do not merely "concern Plaintiff's own job responsibilities and [ ] interactions with her immediate supervisors," *see* Def.'s Opp. at 8, and are unlikely to have been known by Plaintiff prior to discovery. For example, Plaintiff adds allegations that Wingate Healthcare maintained Plaintiff's employment records, including her time records, pay records, performance evaluations, and personnel records concerning raises. *See* Am. Compl. ¶ 31; Pl.'s Reply at 2.[3]

---

[3] In Plaintiff's opening brief and the Clark Declaration, Plaintiff asserts that she learned certain facts by reviewing documents produced during discovery, though she does not provide specific details about which documents she reviewed and which facts were learned. *See* Pl.'s Mem. at 2; Clark Decl. ¶ 7. In reply, Plaintiff further elaborates on this point, explaining that she learned through discovery that Wingate Healthcare maintained certain of her employment records. Pl.'s Reply at 2. While it is well established that a court need not consider arguments raised for the first time in a reply submission, *see, e.g.*, *Cohain v. Klimley*, Nos. 08-cv-5047, 09-cv-4527 (PGG), 2011 WL 3896095, at *5 n.4 (S.D.N.Y. Aug. 31, 2011) ("Plaintiffs may not salvage their motions to amend by raising new arguments or claims in a reply brief."), that is not what Plaintiff has done here, since the argument was raised—albeit in more general terms—in the opening brief. The better course of action for Plaintiff would have been to include more detail about the specific discovery that gave rise to the basis for the amendment in the opening

This recently learned fact—the extent to which the entities share records—is relevant to Plaintiff's theory that Wingate Healthcare was her "employer" pursuant to the FLSA and NYLL. *See* Section II.C, *infra*. Thus, Plaintiff has adequately demonstrated that she acted with diligence—because the proposed amendment relies on information that was not available to Plaintiff prior to the scheduling order deadline, she would not have been in a position to seek to amend the complaint in this way prior to the expiration of that deadline. *Salomon*, 960 F. Supp. 2d at 507 ("Because Plaintiffs learned about the putative employer status of the additional parties through discovery after the expiration of the scheduling order deadline, their inability to add the parties prior to the expiration of the deadline does not constitute a failure of diligence."); *Soroof*, 283 F.R.D. at 148-49 (finding plaintiff acted diligently in moving to add corporate parent as defendant where plaintiff previously knew certain facts, but learned others in discovery relevant to claims against corporate parent).

      Moreover, Plaintiff acted expeditiously in bringing her request to join Wingate Healthcare. Plaintiff filed the instant motion approximately two weeks after learning that Wingate of Dutchess had been placed into a receivership, and approximately three months after the parties exchanged documents. *See* Clark Decl. ¶¶ 4, 7; Def.'s Opp. at 5. Upon learning new factual information and upon learning of the financial circumstances facing Wingate of Dutchess, Plaintiff acted diligently in seeking to amend the complaint. *See, e.g.*, *Scott*, 300 F.R.D. at 196, 199 (finding good cause existed to amend pleading under Rule 16(b) where plaintiffs learned of additional potential plaintiffs over four months before moving to amend); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (finding that good

---

brief, but the Court does not find the lack of specificity in the opening brief to be fatal to Plaintiff's requested relief here.

cause existed to amend pleading under Rule 16(b) when plaintiff sought leave within two months of discovering the relevant facts underlying its new cause of action).[4]

Accordingly, Plaintiff has demonstrated the requisite diligence to support a finding that there is good cause to allow the amendment of the complaint even though the scheduling order deadline for amendment of pleadings has expired.  *See Soroof*, 283 F.R.D. at 148-49.

### B.     Prejudice

The Court must next address whether the proposed amendment would be unduly prejudicial to Defendant.  *See Kassner*, 496 F.3d at 244.  "[P]rejudice to the non-moving party is a key inquiry under [both] the Rule 15(a) and Rule 16(b) analyses" for leave to amend a complaint.  *Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc.*, No. 12-cv-5160 (KPF), 2013 WL 4526246, at *6 (S.D.N.Y. Aug. 27, 2013); *see Cummins, Inc. v. N.Y. Life Ins.*, No. 10-cv-9252 (TPG), 2012 WL 3870308, at *4 (S.D.N.Y. Sept. 6, 2012) (considering prejudice to defendants as part of Rule 16(b) analysis); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *12 (E.D.N.Y. Mar. 26, 2010) (same).

"Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute."  *AEP Energy Servs. Gas Holding Co. v. Bank of*

---

[4] It is undoubtedly true that Plaintiff is seeking to amend the complaint because Wingate of Dutchess entered into receivership while this action was pending, and that without the addition of Wingate Healthcare, Plaintiff has reason to "fear that her lawsuit may not be as fruitful as she once hoped."  Def.'s Opp. at 8-9.  While Wingate of Dutchess's precarious financial circumstances would not, on its own, be sufficient to permit amendment of the complaint if Plaintiff did not satisfy the relevant legal standards, it also is not a reason, on its own, to deny leave to amend.  The discovery that a defendant may not be able to pay a judgment against it "is not a disqualifying motive" to amend a complaint.  *See Cromer Fin. Ltd. v. Berger*, Nos. 00-cv-2284, 00-cv-2498 (DLC), 2002 WL 826847, at *12 (S.D.N.Y. May 2, 2002) (granting motion to amend over defendant's objection that "pleading is motivated principally by the desire to locate a deeper pocket").

*Am., N.A.*, 626 F.3d 699, 725-26 (2d Cir. 2010) (quotation marks omitted). "[T]hat some additional discovery may be needed does not alone constitute undue prejudice." *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-05345 (AJN) (KHP), 2019 WL 2324587, at *3 (S.D.N.Y. May 29, 2019). Additionally, "[a]llegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'" *Sanderson v. Leg Apparel LLC*, No. 19-cv-8423 (GHW), 2020 WL 7342742, at *13 (S.D.N.Y. Dec. 14, 2020) (quotation marks omitted). "The burden of demonstrating prejudice rests with the non-movant." *Scott,* 300 F.R.D. at 198.

Defendant asserts that amending the complaint would result in the need for "additional document discovery" and would "vastly alter the scope of depositions already noticed, result in the noticing of additional depositions, and require increased travel and expense to locate and secure testimony from even more former employees." Def.'s Opp. at 10. Meanwhile, Plaintiff maintains that Defendant would suffer no undue prejudice because the asserted causes of action remain the same and this case is in relatively early stages. Pl.'s Mem. at 3; Pl.'s Reply at 4.

The Court agrees with Plaintiff and finds that Defendant has overstated any potential prejudice that may arise from allowing the amendment. Discovery had not yet been completed when Plaintiff filed her motion to amend, and the parties sought (and received) extensions of time to complete discovery for the express reason that the Court's decision on Plaintiff's motion to amend "will impact the scope of depositions already noticed, and may necessitate the taking of additional depositions." ECF Nos. 35 (extension request), 36 (order granting extension request). Moreover, no motion for summary judgment has been filed, and no trial date has been set. In these circumstances, any prejudice to Defendant is limited. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454-55 (S.D.N.Y. 2016) (finding "alleged prejudice does not rise to a level

that justifies denying leave to amend" where "discovery is still underway, and neither a summary judgment briefing schedule nor a trial date has been set"). Finally, while Plaintiff has proposed adding a defendant, she has not added any additional causes of action. Clark Decl. ¶ 9; *compare* Compl. ¶¶ 34-57 *with* Am. Compl. ¶¶ 58-81. That "the proposed amendment arises from the same set of operative facts as the original claims" minimizes any prejudice to Defendant. *Michalek v. Amplify Sports & Ent. LLC*, No. 11-cv-508 (PGG), 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012); *see also Agerbrink*, 155 F. Supp. 3d at 455 (finding burden of additional discovery to be limited where discovery related to amended pleading "overlaps with that required for current claims").[5]

Accordingly, Defendant has not demonstrated that it will suffer undue prejudice if the motion for leave to amend the complaint is granted, and the Court will not deny the motion on that basis.

### C.   Futility

The final basis on which Defendant contests Plaintiff's motion to amend is that the proposed amendment would be futile. Def.'s Opp. at 9. "Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a

---

[5] The Court also notes that Defendant's assertion of prejudice in these circumstances rings somewhat hollow. Plaintiff was not informed that Wingate of Dutchess was being transferred to a receivership until July 13, 2022, when a third-party had been authorized to assume the operation. Pl.'s Reply at 4; Def.'s Opp. at 5. Presumably, Defendant was aware that Defendant would be placed into a receivership well before this date. *See* Def.'s Opp. at 5 (explaining process by which Wingate of Dutchess was transitioned to a receivership). While the Court recognizes that there may have been various valid reasons unrelated to the conduct of this case for Wingate of Dutchess to have refrained from disclosing anything about the anticipated receivership until the day the arrangements were finalized, a significant amount of the purported prejudice is directly attributable to Defendant's compromised financial circumstances and the decision not to disclose anything about those circumstances until the latest possible date.

claim on which relief can be granted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citation omitted). To make this assessment, courts "must determine if the proposed amendment contains 'sufficient factual matter' which, accepted as true, states a claim that is 'plausible on its face.'" *Salomon*, 960 F. Supp. 2d at 508-09 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For the purposes of [Defendant's] futility argument, the Court [ ] draws all reasonable inferences in Plaintiff['s] favor." *Id.* at 509.

To be liable under the FLSA, a defendant must be an "employer," which is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d); *see Herman v. RSR Sec. Serv. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).[6] "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." *Herman*, 172 F.3d at 139 (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)).

For the purposes of the FLSA, the determination of whether an employer-employee relationship exists "should be grounded in economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quotation marks omitted). There is no single economic-reality test consisting of uniform factors. Rather, "economic realities are assessed by reference to 'the particular situation' with some factors more important than others depending on the FLSA question at issue and the context in which it arises." *Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 167 (2d Cir. 2014) (listing several "economic reality tests," including those for "employer status," "[t]o distinguish between employees and independent

---

[6] Because "[t]he NYLL uses the same definition of an employer as the FLSA," this Court's analysis under the FLSA is equally applicable to Plaintiff's NYLL claims. *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 439 n.2 (S.D.N.Y. 2017) (quotation marks omitted); *see also Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 24 (E.D.N.Y. 2020) ("In the Second Circuit, courts generally interpret the statutory standard for employer status under NYLL to be nearly identical to that of the FLSA.").

contractors," and "to determine whether an individual was a domestic service worker or a household member"). "In addition, an individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case, all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the FLSA." *Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18-cv-6018 (PAE), 2019 WL 633355, at *5 (S.D.N.Y. Feb. 14, 2019) (cleaned up).

Here, Plaintiff alleges that Wingate Healthcare was her employer pursuant to two alternative legal theories: (1) Wingate Healthcare and Wingate of Dutchess were "joint employers" and Wingate Healthcare exercised "formal control" over Plaintiff; and (2) the two entities were a "single integrated employer." Am. Compl. ¶ 23; Pl.'s Mem. at 3; Pl.'s Reply at 2 n.1, 3-4.

### a. Joint Employer Exercising Formal Control

"The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (citing 29 C.F.R. § 791.2). "This means that even when one entity exerts ultimate control over a worker, that does not preclude a finding that another entity exerts sufficient control to qualify as a joint employer under the FLSA." *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 258 (S.D.N.Y. 2012) (quotation marks omitted).

An entity may be liable as a joint employer where it exercises formal control over an employee. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 144 (2d Cir. 2008). The Second Circuit has identified four factors to determine whether an employer has exercised formal control: "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employment records.'" *Id.* at 142 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).[7]

The only argument offered by Defendant on this point is the brief, conclusory statement that Plaintiff "has not alleged sufficient facts that, if accepted as true, would establish Wingate Healthcare was Plaintiff's joint employer . . . ." Def.'s Opp. at 9.[8]  The Court disagrees. Plaintiff has alleged that Wingate Healthcare executives and managers were responsible for controlling the work schedules and conditions of employees of Wingate of Dutchess.  Am. Compl. ¶ 24.  In support of this allegation, Plaintiff alleges that her direct supervisor was an employee of Wingate Healthcare and a member of Wingate Healthcare's "Leadership Team." *See id.* ¶¶ 15, 24.  Plaintiff further alleges that Wingate Healthcare determined the rate and method by which she was paid, providing an example whereby Plaintiff inquired into an issue concerning weekend bonus pay that was addressed by two Wingate Healthcare employees.  *Id.* ¶¶ 27-29.  Plaintiff also alleges that her weekly payroll was approved by her direct supervisor, a Wingate Healthcare employee, and any bonuses in excess of $500 were approved by Wingate Healthcare's Vice President of Operations.  *Id.* ¶ 30.  Finally, Plaintiff alleges that Wingate Healthcare maintained her employment records, including documents concerning her job description, time records, pay records, performance evaluations, and personnel records

---

[7] Notably, however, the Second Circuit explained in this same decision that different employment arrangements can present circumstances that require the application of different factors in different contexts, and that various precedents "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143 (quotation marks omitted).

[8] Defendant also states that the Amended Complaint "did little more than exchange the term 'Defendant' for 'Defendants.'"  Def.'s Opp. at 9.  This is demonstrably false.  *See* Am. Compl. ¶¶ 14-36.

concerning raises. *Id.* ¶ 31. These allegations, taken together, are sufficient to state a claim of joint employer status under the FLSA. *See Cano*, 287 F.R.D. at 260 (finding plaintiff plausibly alleged joint employer status where plaintiff pleaded, *inter alia*, that proposed defendants controlled employee compensation, retained payroll records, and monitored employee performance); *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206-07 (S.D.N.Y. 2014) (finding plaintiff plausibly alleged defendants were joint employers where plaintiff pleaded, *inter alia*, that defendants monitored employee performance, controlled recordkeeping policies, controlled timekeeping policies, and set and enforced requirements for operations).

### b. Single Integrated Enterprise

In the alternative, Plaintiff alleges that Wingate Healthcare and Wingate of Dutchess were both employers under the "single integrated enterprise" test that "numerous district courts have used to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014); *see Hsieh Liang Yeh*, 2019 WL 633355, at \*6; *Flores*, 256 F. Supp. 3d at 440. "Under this standard, courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez*, 29 F. Supp. 3d at 367. This test is "usually used to determine whether employees at different arms of a corporate family shared a common employer" rendering multiple corporate entities "jointly responsible for" FLSA violations. *Hsieh Liang Yeh*, 2019 WL 633355, at \*6-7.

Again, Defendant offered only the limited argument that Plaintiff "has not alleged sufficient facts that, if accepted as true, would establish Wingate Healthcare was . . . a single integrated enterprise." Def.'s Opp. at 9. But Plaintiff has likewise pled sufficient facts to allege Wingate Healthcare and Wingate of Dutchess were a single integrated enterprise. Plaintiff

alleges that the two companies were interrelated insofar as the two companies shared employees and records.  Am. Compl. ¶¶ 31, 33.  Specifically, Plaintiff alleges that she was directly supervised by a Wingate Healthcare employee and at one point, certain of her duties were reassigned to a Wingate Healthcare employee.  *Id.* ¶ 34.  Plaintiff also alleges that there was centralized control of labor relations and common management, providing the example that a compensation issue was addressed and resolved by members of the Leadership Team of Wingate Healthcare.  *Id.* ¶¶ 28-29, 35.  Plaintiff further alleges that her direct supervisor was the Regional Vice President of Sales and Marketing for Wingate Healthcare, and that the employee handbook that governed the terms of her employment was issued by Wingate Healthcare.  *Id.* ¶¶ 14-17, 26.  Finally, Plaintiff alleges that the entities share ownership and financial control—as alleged in the Amended Complaint, Wingate Healthcare owns Wingate of Dutchess, and Wingate of Dutchess is Wingate Healthcare's subsidiary.  *Id.* ¶¶ 21-22, 36.  At this stage in the proceedings, these allegations are sufficient to plausibly allege that Wingate of Dutchess and Wingate Healthcare operated as an integrated enterprise.  *See Juarez*, 29 F. Supp. 3d at 367-68.

* * * * * * * *

Because the proposed amended complaint adequately alleges facts sufficient to state a claim that Wingate Healthcare was the joint employer of Plaintiff, and/or that Wingate Healthcare and Wingate of Dutchess are a single integrated enterprise, amendment of the complaint to add Wingate Healthcare as a defendant would not be futile.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file the Amended Complaint, ECF No. 27, is GRANTED.  Plaintiff is directed to serve and file the Amended Complaint as a separate, standalone entry on the docket by November 23, 2022.  Defendants are directed to file

their responses to the Amended Complaint by December 7, 2022. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 27.

Dated: November 18, 2022
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge